UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

DM INDUSTRIES, LTD.,                                Case No. _____

        Debtor.
_____/

**DEBTOR'S APPLICATION FOR ORDER AUTHORIZING THE RETENTION OF
CRISIS MANAGEMENT, INC. EFECTIVE AS OF THE PETITION DATE**

      DM Industries, Ltd., (the "Debtor" or the "Company"), files this *Application for Order Authorizing the Retention of Crisis Management, Inc. Effective as of the Petition Date* (the "Application"), seeking an order authorizing the retention of the business advisory firm of Crisis Management, Inc. ("CMI") to provide restructuring management services, including providing a Chief Restructuring Officer ("CRO"), Alan L. Goldberg ("Goldberg"), effective as of this date and states:

**Background**

      1.      On the date hereof (the "Petition Date"), the Debtor commenced this case upon the filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court.

      2.      The Debtor is operating its business and managing its affairs as a debtor in possession.  11 U.S.C. §§ 1107(a) and 1108.

      3.      The Debtor is a leading manufacturer of luxury hydrotherapy products for indoor and outdoor use.  The Company produces portable hot tubs, swim spas and luxury whirlpool tubs marketed worldwide under the brand names of Vita Spa, Vita Bath, xStream Pro, and Reflection

2032691-3

Spas. The Debtor's headquarters and manufacturing facilities are located in six buildings (with area of approximately 275,000 square feet) in Opa-Locka, Florida.

4. As noted in the *Declaration of Eric Dormoy in Support of First Day Pleadings* (the "First Day Declaration") filed contemporaneously herewith, the Debtor successfully operated its hydrotherapy business from inception in the 1970s through 2007. With the downturn in the economy, sales of the Company's luxury hydro products to distributors and builders diminished significantly. During the fourth quarter of 2008, sales plummeted to an all time low. Based on the operational difficulties noted and further described in the First Day Declaration, the Debtor sought the assistance of CMI and Goldberg to provide restructuring advise prior to the Petition Date.

5. Accordingly, on February 17, 2009, the Debtor retained CMI and Goldberg to provide financial advisory services to the Debtor. By letter dated February 17, 2009 (the "Engagement Letter"), the Debtor retained CMI to provide restructuring management services, including providing a CRO. A copy of the Engagement Letter is attached as **Exhibit A** to this Application.

6. As of the date of this Application, CMI and Goldberg have spent a considerable amount of time reviewing and analyzing the Debtor's operation, capital structure and financial performance.

**Relief Requested**

7. The Debtor seeks to retain CMI and Goldberg pursuant to the terms and conditions described in the Engagement Letter. The requested retention by the Debtor is sought pursuant to sections 105(a) and 363(b) of the Bankruptcy Code.

**A.     Services to be Provided**

8.     The terms of the proposed retention of CMI, are described in the Engagement Letter.  Pursuant to the Engagement Letter, CMI shall provide the following services for the Debtors:

- a.     Officers.  In connection with this engagement, CMI shall make available to the Debtor Alan L. Goldberg to serve as the Chief Restructuring Officer of the Company (the "CRO").

- b.     Duties and Powers.

    - (i)     The CRO shall have the combined sole and absolute power and authority of the chief executive officer, the chief operating officer, chief financial officer, and the chief restructuring officer of the Company for all purposes; including, without limitation (and without in any way limiting the foregoing grant of corporate power and authority), the sole power and authority: (a) to open and close bank accounts for the Company, (b) to transfer funds of the Company, (c) to hire and terminate employees of the Company with the exception of Eric Dormoy, whose compensation program shall remain intact; (d) to cause the Company to modify, amend, terminate and/or enforce  any of its any contractual rights; (e) to cause the Company to enter into any agreement or contract; (f) to cause the Company to pursue, settle or compromise any litigation, controversy or other dispute involving the Company, (g) to cause the Company to borrow funds and to pledge any of its assets in order to pay the working capital needs of the Company, (h) to cause the Company to exercise the Company's rights under the Company's agreements and other agreements in favor of the Company, (i) to cause the Company to commence a proceeding under Chapter 11 of the Bankruptcy Code or to take such other judicial action with respect to the Company and (j) to cause the Company to take any other action which the CRO, in good faith, determines to be necessary, prudent or appropriate under the circumstances.

    - (ii)     The CRO shall perform a financial review of the Company, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows, and shall assist the Company in developing, refining and implementing its business plans, and the CRO shall have the power to implement such business plans; and

      (iii)    The CRO shall assist in the identification of cost reduction and operations improvement opportunities and the CRO shall have the power and authority to implement such cost reduction recommendations; and

      (iv)    The CRO shall develop possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business products, the CRO shall determine which plan(s) or alternative(s) are appropriate under the circumstances and the CRO shall use commercially reasonable efforts to attempt to implement such plan(s) or alternative(s).

      (v)    The CRO shall be responsible for assisting with the preparation of the Schedules and Statements of Financial Affairs and provide the Company with any other services that it and CMI mutually agree upon.

**B.**    **Terms of Retention**

9.    The terms of CMI's proposed compensation are fully set forth in the Engagement Letter, and the Debtor respectfully refers this Court to the Engagement Letter for a full recitation of such terms.

10.    CMI has received a retainer from the Debtor in the amount of $5,000.00 as security for the fees and costs that may be awarded to it by the Court in this case for post-petition advisory services.

11.    In addition to compensation for services rendered by CMI's personnel, CMI will seek reimbursement for reasonable and necessary expenses incurred in connection with this Chapter 11 case, including for travel, lodging, postage, and telephone and facsimile services. CMI will submit weekly invoices to the Debtor for services rendered and expenses incurred. The Debtor will be authorized to pay, in the ordinary course of its business, all reasonable amounts invoiced by CMI for fees and expenses.

12.    Because CMI is not being employed as a professional under section 327 of the Bankruptcy Code, it will not be submitting quarterly fee applications pursuant to sections 330

and 331 of the Bankruptcy Code. CMI, however, will submit to this Court quarterly reports of compensation earned. Parties in interest shall have the right to object to fees paid when quarterly reports of compensation earned are filed with this Court. The first quarterly report will be submitted 45 days from the end of the first calendar quarter after the Petition Date and will cover the period to and including the last day of the first quarter after the Petition Date. This procedure will continue at three-month intervals thereafter.

13. CMI and Goldberg have extensive experience in providing restructuring advisory services in reorganization proceedings and have an excellent reputation for the services they have rendered in Chapter 11 cases on behalf of debtors and creditors. The compensation arrangement reflected in the Engagement Letter is consistent with, and typical of, arrangements entered into by CMI and other restructuring and consulting firms with respect to rendering similar services for clients such as the Debtor.

14. The Debtor believes that it is in the best interest of the estate to retain CMI as the restructuring advisor and Goldberg as the CRO. The Debtor believes that Goldberg and CMI are qualified to provide the restructuring management services necessary to the Debtor and to advise the Debtor on post-petition operations including the Debtor's relation with and responsibilities to the creditors of the estate.

## Basis for Relief Requested

15. Section 105(a) of the Bankruptcy Code provides in pertinent part that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Section 363(b) of the Bankruptcy Code provides in part that a debtor in possession "after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. 363(b). Under applicable case

5

law, in this and other circuits, if a debtor's proposed use of its assets pursuant to section 363(b) of the Bankruptcy Code represents a reasonable business judgment on the part of the debtor, such use should be approved. *See, e.g.*, *In re Gulf States, Steel, Inc.*, 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002); *Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986); *Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1983); *Comm. Of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2nd Cir. 1983); *In re Delaware & Hudson R.R. Co.*, 124 B.R. 169, 176 (D. Del. 1991) (courts have applied the "sound business purpose" test to evaluate motions brought pursuant to section 363(b)); *Committee of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to debtor's conduct").

16. The retention of interim corporate officers and other temporary employees is proper under section 363 of the Bankruptcy Code. Numerous courts have authorized retention of officers utilizing this provision of the Bankruptcy Code. For example, the United States Bankruptcy Courts for the District of Delaware, the Northern District of Illinois, the Southern District of New York and the Southern District of Florida have approved the retention of temporary employees to provide restructuring services and interim management services under section 363 of the Bankruptcy Code. *See In re AT&T Latin America Corp., et al.* (Case No. 03-13538) (RAM) (Bankr. S.D. Fla. June 11, 2003); *In re Acterna Corp., et al.,* Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. July 2, 2003); *In re Exide Technologies, Inc., et al.* (Case No. 02-11125)(JCA) (Bankr. D. Del. May 10, 2002); *In re Kmart Corp., et al.* (Case No. 02-

B02474)(SPS) (Bankr. N.D. Ill. May 22, 2002); *In re Piccadilly Cafeterias*, (Case No. 03-27976-BKC-RBR) (Bankr. S.D. Fla. Oct. 31, 2003); and *In re WorldCom Group, et al.*, (Case No. 02-13533)(AJG) (Bankr. S.D.N.Y. Sept. 17, 2002).

17. The Debtor submits that the employment of CMI and Goldberg under the terms and conditions contained in the Engagement Letter would greatly benefit the Debtor's estate and creditors.

18. No previous motion or application for the relief sought herein has been made to this or any other Court.

19. The Debtor request that the retention of CMI and Goldberg be approved *nunc pro tunc* to Petition Date.

WHEREFORE, the Debtor respectfully requests the entry of an order in the form attached hereto as **Exhibit B** (i) granting this Application; (ii) authorizing the Debtor to engage CMI to provide restructuring management services *nunc pro tunc* to the Petition Date, including providing a CRO upon the terms and conditions contained in the Engagement Letter, (iii) designating Goldberg as the CRO, and (iv) granting any other relief as this Court deems appropriate.

Dated: March 27, 2009

Respectfully submitted,
DM Industries, Ltd.

By: _____
Eric Dormoy
President, MAS Industries, Inc.
General Partner

2032691-3

7

**Exhibit A**

**Exhibit A**



# CHIEF RESTRUCTURING OFFICER
# ENGAGEMENT LETTER AGREEMENT

February 17, 2009

Via Hand Delivery

Eric Dormoy
DM Industries, Ltd.
2320 NW 147th Street
Opa Locka, Florida 33054

RE: Engagement of Crisis Management, Inc. as the Chief Restructuring Officer for DM Industries Ltd., a Florida limited partnership (the "Company").

Dear Mr. Dormoy:

This letter confirms and sets forth the terms and conditions of the engagement between Crisis Management, Inc. ("CMI") and DM Industries, Ltd., a Florida limited partnership, including the scope of the services to be performed and the basis of compensation for those services. Upon execution of this letter by each of the parties below and receipt of the first week's payment under this Agreement in the amount of $5,000 in advance, this letter will constitute an agreement between the Company and CMI.

1. Description of Services

   a. Officers. In connection with this engagement, CMI shall make available to the Company Alan L. Goldberg to serve as the Chief Restructuring Officer of the Company (the "CRO").

   b. Duties and Powers.

      (i) The CRO shall have the combined sole and absolute power and authority of the chief executive officer, the chief operating officer, chief financial officer, and the chief restructuring officer of the Company for all purposes; including, without limitation (and without in any way limiting the foregoing grant of power and authority), the sole power and authority (without the consent or approval of the management of the Company, any partner of the

Company or any other person or legal entity): (a) to open and close bank accounts for the Company, (b) to transfer funds of the Company, (c) to hire and terminate employees of the Company, with the exception of Eric Dormoy, whose compensation program shall remain intact; (d) to cause the Company to modify, amend, terminate and/or enforce any of its any contractual rights; (e) to cause the Company to enter into any agreement or contract; (f) to cause the Company to pursue, settle or compromise any litigation, controversy or other dispute involving the Company, (g) to cause the Company to borrow funds and to pledge any of its assets in order to pay the working capital needs of the Company, (h) to cause the Company to commence a case under Chapter 11 of the Bankruptcy Code or to take such other judicial action with respect to the Company and (i) to cause the Company to take any other action which the CRO, in good faith, determines to be necessary, prudent or appropriate under the circumstances.

(ii) The CRO shall perform a financial review of the Company, including but not limited to a review and assessment of financial information that has been, and that will be, provided by the Company to its creditors, including without limitation its short and long-term projected cash flows, and shall assist the Company in developing, refining and implementing its business plans, and the CRO shall have the power to implement such business plans; and

(iii) The CRO shall assist in the identification of cost reduction and operations improvement opportunities and the CRO shall have the power and authority to implement such cost reduction recommendations; and

(iv) The CRO shall develop possible restructuring plans or strategic alternatives for maximizing the enterprise value of the Company's various business lines; the CRO shall determine which plan(s) or alternative(s) are appropriate under the circumstances and the CRO shall use commercially reasonable efforts to attempt to implement such plan(s) or alternative(s).

c. Reporting. The CRO shall report to the partners of the Company; provided however that the CRO shall not require the consent or approval of such partners to take action (or elect not to take action) in such officer's capacity as CRO and to the officers and counsel for Comerica Bank (the "Bank") that are designated by the Bank.

d. <u>Employment by CMI</u>. The CRO will continue to be employed by CMI and while rendering services to the Company will continue to work with other personnel at CMI in connection with other unrelated matters, which will not unduly interfere with services pursuant to this engagement. With respect to the Company, however, the CRO shall operate pursuant to the terms of this Agreement and CMI shall have no liability to the Company for any acts or omissions of such officers.

e. <u>Projections; Reliance; Limitation of Duties</u>. You understand that the services to be rendered by the CRO may include the preparation of projections and other forward-looking statements, and that numerous factors can affect the actual results of the Company's operations, which may materially and adversely differ from those projections and other forward-looking statements. In addition, the CRO will be relying on information provided by other members of the Company's management in the preparation of those projections and other forward-looking statements. Neither the CRO nor CMI makes any representation or guarantee that an appropriate restructuring proposal or strategic alternative can be formulated for the Company, that any restructuring proposal or strategic alternative selected by CMI and the CRO will be more successful than all other possible restructuring proposals or strategic alternatives, that restructuring is the best course of action for the Company or, if formulated, that any proposed restructuring plan or strategic alternative will be accepted by any of the Company's creditors, shareholders and other constituents. Further, the Company hereby authorizes the CRO and CMI to select the restructuring proposal(s) or strategic alternative(s) that CMI and the CRO deem (in the exercise of their sole and absolute discretion) to be prudent or reasonable under the circumstances and CMI and the CRO are hereby authorized and empowered to implement such proposal(s) and alternative(s) selected by CMI and the CRO without the consent or approval of any person or legal entity.

f. <u>Additional Responsibilities</u>. Upon the mutual agreement of the Company and CMI, CMI may provide such additional personnel as the Company may request to assist in performing the services described above and such other services as may be agreed to, on such terms and conditions and for such compensation as the Company and CMI shall agree.

2. <u>Compensation</u>

a. CMI will bill the Company weekly for the services of the CRO and will bill Alan Goldberg's time at the rate of $275 per hour and other employees of CMI at a lower hourly rate commensurate with their duties and experience and at the rate customarily charged by CMI to others.

b. In addition, CMI will be reimbursed by the Company for the reasonable out-of-pocket expenses of the CRO, and if applicable and agreed, other CMI personnel, incurred in connection with this assignment, such as reasonable out-of-town travel, reasonable out-of-town lodging, document duplications, computer research, messenger and telephone charges. All fees and expenses due to CMI will be billed on a weekly basis or, at CMI's discretion, more frequently, and shall be due and payable on each Monday during the Term of this Agreement for the prior calendar week.

3. Term

The engagement will commence as of the date hereof and may be terminated by either party without cause by giving 7 days written notice to the other party. In the event of any such termination, any fees and expenses due to CMI shall be remitted promptly (including fees and expenses that accrued prior to but were invoiced subsequent to such termination). The Company may immediately terminate CMI's services hereunder at any time for Cause (hereinafter defined) by giving written notice to CMI. CMI may immediately terminate CMI's services hereunder at any time for Good Reason (hereinafter defined) by giving written notice to the Company. Upon CMI's act of termination, the Company shall be relieved of all of its payment obligations under this Agreement, except for the payment of fees and expenses through the effective date of termination (including fees and expenses that accrued prior to but were invoiced subsequent to such termination) and its obligations under paragraph 8. For purposes of this Agreement, "Cause" shall mean if (i) the CRO is convicted of, admits guilt in a written document filed with a court of competent jurisdiction to, or enters a plea of nolo contendere to, an allegation of fraud, embezzlement, misappropriation or any felony; or (ii) a material breach of any of CMI's or the CRO material obligations under this Agreement which is not cured within 7 days after the Company' written notice thereof to CMI describing in reasonable detail the nature of the alleged breach. For purposes of this Agreement, termination for "Good Reason" shall mean termination caused by a breach by the Company of any of its material obligations under this Agreement that is not cured within 5 days after CMI having given written notice of such breach to the Company describing in reasonable detail the nature of the alleged breach.

4. No Audit. Duty to Update

It is understood that the CRO and CMI are not being requested to perform an audit, review or compilation, or any other type of financial statement reporting that is subject to the rules of the AICPA, SEC or other state or national professional or regulatory body. They are entitled to rely on the accuracy and validity of the data disclosed to them or supplied to them by employees and representatives of the Company. The CRO and CMI are under no obligation to update data submitted to them or review any other areas.

5. No Third Party Beneficiary.

The Company acknowledges that all advice (written or oral) given by CMI to the Company in connection with this engagement is intended solely for the benefit and use of the Company (limited to its management) in considering the matters to which this engagement relates. The Company agrees that no such advice shall be used for any other purpose or reproduced, disseminated, quoted or referred to at any time in any manner or for any purpose other than accomplishing the tasks referred to herein without CMI's prior approval (which shall not be unreasonably withheld), except as required by law.

6. Conflicts.

CMI is not currently aware of any relationship that would create a conflict of interest with the Company or those parties-in-interest of which you have made us aware. Because CMI is a consulting firm that serves clients on an international basis in numerous cases, both in and out of court, it is possible that CMI may have rendered services to or have business associations with other entities or people which had or have or may have relationships with the Company, including creditors of the Company. If you accept the terms of this engagement, CMI will not represent, and CMI has not represented, the interests of any such entities or people in connection with this matter.

7. Confidentiality / Non-Solicitation.

The CRO and CMI shall keep as confidential all non-public information received from the Company in conjunction with this engagement, except (i) as requested by the Company or its legal counsel; (ii) as required by legal proceedings or (iii) as reasonably required in the performance of this engagement. All obligations as to non-disclosure shall cease as to any part of such information to the extent that such information is or becomes public other than as a result of a breach of this provision.

8. Indemnification.

The Company shall indemnify the CMI and the CRO to the same extent as the most favorable indemnification it extends to its officers, whether under the Company' bylaws, its partnership agreement, or otherwise, and no reduction or termination in any of the benefits provided under any such indemnities shall affect the benefits provided to CMI and the CRO. The attached indemnity provisions are incorporated herein and the termination of this agreement or the engagement shall not affect those provisions, which shall survive termination. The provisions of this section 8 are in the nature of contractual obligations and no change in applicable law or the Company' charter, bylaws, or other organizational documents or policies shall affect the CRO's or CMI's rights hereunder.

9. Miscellaneous.

This Agreement shall (together with the attached indemnity provisions) be: (a) governed and construed in accordance with the laws of the State of Florida, regardless of the laws that might otherwise govern under applicable principles of conflict of laws thereof; (b) incorporates the entire understanding of the parties with respect to the subject matter thereof; and (c) may not be amended or modified except in writing executed by each of the signatories hereto. The Company and CMI agree to waive trial by jury in any action, proceeding or counterclaim brought by or on behalf of the parties hereto with respect to any matter relating to or arising out of the performance or non-performance of the Company or CMI hereunder.

**Signatures On Next Page**

If the foregoing is acceptable to you, kindly sign the enclosed copy to acknowledge your agreement with its terms.

Very truly yours,

CRISIS MANAGEMENT, INC., a
Florida corporation

By: _____
Alan L. Goldberg, President

Accepted and Agreed:

DM INDUSTRIES, LTD., a Florida
limited partnership

By: _____
Name Eric Donnoy
Title:    CEO

**EXHIBIT B**
**PROPOSED ORDER**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
www.flsb.uscourts.gov

In re:                                              Chapter 11 Cases

DM INDUSTRIES, LTD.,                                Case No. _____

        Debtor.
_____/

**INTERIM ORDER GRANTING DEBTOR'S APPLICATION FOR ORDER
AUTHORIZING THE RETENTION OF CRISIS MANAGEMENT, INC.
*NUNC PRO TUNC* TO PETITION DATE**

**THE MATTER** came before the Court on the ____ day of _____, 2009 at ____ a.m./p.m. in Miami, Florida upon the *Debtor's Application For Order Authorizing the Retention of Crisis Management, Inc. Nunc Pro Tunc to the Petition Date* (the "Application") (D.E. No. __). The Application requests entry of an order approving the Debtor's employment of Crisis Management, Inc. ("CMI") and Alan L. Goldberg ("Goldberg") to serve as chief restructuring officer ("CRO") in this case upon the terms and conditions set forth in the Engagement Letter[1]

---

[1] All terms not otherwise defined herein shall have the meaning ascribed to them in the Application.

2032691-3

attached as Exhibit A to the Application. Upon the Application, the *Declaration of Alan L. Goldberg in Support of Debtor's Application for Order Authorizing Retention of Crisis Management, Inc. Nunc Pro Tunc to Petition Date* [D.E. ____]; and it appearing that neither CMI nor Goldberg holds or represents any interest adverse to the Debtor's estate; and this Court having jurisdiction to consider the Application and the relief requested therein pursuant to 28 U.S.C. §§ 157 and 1334; and consideration of the Application and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being properly before this Court pursuant to 28 U.S.C. § 1408; and it appearing that adequate notice of the Application has been given and that no other and further notice is necessary; and the relief requested in the Application being in the best interests of the Debtor, the estate, and the creditors; and this Court having reviewed the Application and having heard the statements in support of the relief requested therein at a hearing before this Court (the "Hearing"); and this Court having determined that the legal and factual bases set forth in the Application and at the Hearing establish just cause for the relief granted herein; and upon all of the proceedings had before this Court and after due deliberation thereon; and good and sufficient cause appearing therefore, it is

    **ORDERED** that:

1.    The Application is **GRANTED,** on an interim basis.

2.    The Debtor is authorized to: (i) employ and retain CMI on an interim basis on the terms set forth in the Engagement Letter pending the final hearing as set forth below; and (ii) designate Goldberg as CRO for the Debtor.

3.    The employment of CMI by the Debtor shall be *nunc pro tunc* to Petition Date.

4.    To the extent that there may be any inconsistency between the terms of the Application, the Engagement Letter or this Order, the terms of this Order shall govern.

5. The Office of the United States Trustee and other parties-in-interest retain all rights to object to CMI's compensation reports (including expense reimbursement) on all grounds including but not limited to the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6. The Debtor is authorized and empowered to take all actions necessary to implement the relief granted in this Order.

7. The court shall conduct a final hearing (the "Final Hearing") on the Application on _____ \_\_\_\_, 2009 at \_\_\_\_\_ a.m./p.m. at the United States Bankruptcy Court, 51 S.W. First Avenue, Courtroom \_\_\_\_, Miami, Florida.

8. This Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation of this Order.

#   #   #

Submitted by:
Douglas A. Bates, Esq.
BERGER SINGERMAN, P.A.
200 S. Biscayne Blvd., 10th Floor
Miami, FL 33131
Tel: (305) 755-9500
Fax: (305) 714-4340
E-mail:  dbates@bergersingerman.com

Copies to:
Douglas A. Bates, Esq.
*(Attorney Bates is directed to mail a conformed copy of this Order, immediately upon receipt, to all parties in interest)*

2032691-3

3